UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGEA LEE PRESSLEY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. C13-1833-MJP-BAT<br><br>**REPORT AND RECOMMENDATION** |

Georgea Lee Pressley seeks review of the denial of her Supplemental Security Income, Period of Disability, and Disability Insurance Benefits applications. She contends the ALJ erred by (1) failing to find she had a severe impairment of degenerative joint disease at step two; (2) finding her less than fully credible; (3) misevaluating the opinions of Dr. Monica Carillo, M.D., and Dr. Susan Hakeman, M.D. Dkt. 16. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C § 405(g).

**BACKGROUND**

Ms. Pressley is currently 54years old, has a high school education, and has worked as an assistant manager of an antique mall and as a housekeeper. On October 17, 2007, she applied for

REPORT AND RECOMMENDATION - 1

benefits, alleging disability as of February 1, 2006. Tr. 11. Her applications were denied initially and on reconsideration, and by the ALJ after her first hearing. Tr. 11, 22.

This is the second time this matter comes before the Court for judicial review of the administrative decision. The first review (*Pressley v. Astrue*, C10-2007-RSM-BAT, 2011 WL 4437183 (W.D. Wash. 2011), *adopted by* C10-2007-RSM, 2011 WL 4439552 (W.D. Wash. 2011)) resulted in a reverse of ALJ Bauer's decision and a remand directing the ALJ to reassess Ms. Pressley's severe impairments; reassess the medical opinions of Dr. Carillo, Dr. Hakeman, and the state agency medical consultants, reevaluate Ms. Pressley's credibility, and redo the five-step evaluation process as necessary. *See Pressley*, C10-2007-RSM-BAT, 2011 WL 4437183 at *10. Pursuant to remand by the Court, the Appeals Council vacated the first decision. Tr. 701. A different ALJ, Judge Kennedy, conducted a second hearing on May 9, 2012, finding Ms. Pressley not disabled. Tr. 535-550. Ms. Pressley filed exceptions to the ALJ's first decision after remand, and on September 13, 2013, the Appeals Council declined to assume jurisdiction of the case. Tr. 521-30. Accordingly, the ALJ's decision after remand is the Commissioner's final decision that is subject to judicial review. *See* 20 C.F.R. §§ 404.984(a)(2), 422.210.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Pressley had not engaged in substantial gainful activity since February 1, 2006, the alleged onset date.

**Step two:** Ms. Pressley had the following severe impairments: degenerative disc disease, obesity, reactive depression and anxiety related disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

**Residual Functional Capacity:** Ms. Pressley had the residual functional capacity to perform light work and, relevant to this case, could lift up to 20 pounds occasionally and lift and/or carry up to 10 pounds frequently; stand and/or walk about 6 hours during an 8-hour workday; perform frequent fingering with the left hand with no restrictions of the right hand; perform simple, routine tasks and follow short, simple instructions; and she could do work that needs little or no judgment or that can be learned on the job in a short period. Ms. Pressley could have occasional interactions with coworkers and supervisors and could work in close proximity to coworkers and supervisors, but not in a cooperative or team effort. Incidental contact with the general public was not precluded.

**Step four:** Ms. Pressley could perform her past work as a housekeeper.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Pressley can perform, she is not disabled.

Tr. 535-50.

## DISCUSSION

**A.    The ALJ Erred at Step Two**

As a preliminary matter, the Court addresses Ms. Pressley's reliance on comparisons between ALJ Bauer's February 18, 2010 decision, and ALJ Kennedy's August 29, 2012 decision. Ms. Pressley does not raise a law of the case or rule of mandate argument, nor could she. The Court's prior Report and Recommendation, as adopted, directed that on remand, the ALJ reassess Ms. Pressley's severe impairments at step two; reassess the medical opinions of Dr. Carillo, Dr. Hakeman, and the state agency medical consultants; reevaluate Ms. Pressley's credibility, and "redo the five-step disability evaluation process as necessary." *Pressley.* 2011 WL 4437183, at *9, *adopted by Pressley* 2011 WL 4439552. Ms. Pressley provides no authority suggesting that, on remand, ALJ Kennedy was bound by ALJ Bauer's decision. The Court further notes that the Order of Appeals Council remanding the case to the ALJ after the Court's Order Reversing and Remanding review states "the Appeals Council *vacates* the final decision of the Commissioner of Social Security . . . " Tr. 701 (emphasis added). Accordingly, the Court rejects Ms. Pressley's arguments suggesting ALJ Kennedy erred in rendering a decision that

REPORT AND RECOMMENDATION - 3

conflicted with ALJ Bauer's decision.  *See, e.g.,* Dkt. 16 at 14 ("Plaintiff contends that [ALJ Kennedy's] step 2 finding is incomplete, and conflicts with the prior step 2 finding of ALJ Bauer that the medical evidence documents severe impairments of degenerative disc disease and degenerative joint disease.").

At step two, Ms. Pressley has the burden of proof to show (1) that she has medically determinable impairments; and (2) that her medically determinable impairments are severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 145, (1987); 20 C.F.R. § 404.1520(c).  An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1508.  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520; 404.1521.  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Ms. Pressley contends the ALJ erred in failing to find she had a severe impairment of degenerative joint disease in her hand and knees.  Dkt. 16 at 14.  Specifically, she argues the ALJ ignored evidence regarding her hand and knee arthritis.  *Id*. at 14-17; Dkt. 20 at 4.  At step two, the ALJ found Ms. Pressley had a severe impairment of degenerative disc disease, but declined to find a severe impairment of osteoarthritis (of the left hand) because there was "no report of any adverse effect on the claimant's performance of work-related activities."  Tr. 538-39.  Stated differently, the ALJ found the impairment non-severe.  Because it is unclear whether Ms. Pressley contends her hand and knee arthritis are separate impairments, the Court assesses each in turn.

REPORT AND RECOMMENDATION - 4

Ms. Pressley urges the Court to consider several medical opinions. In evaluating her hand impairments, Dr. Mark Heilbrunn's March 2008 disability evaluation diagnosed "[b]ilateral hand non-inflammatory arthritis (degenerative joint disease) of the finger and left thumb metacarpal phalangeal joints." Tr. 328. State Agency consultant Bill Flynn[3] opined her fingering is limited to "occasional." Tr. 334; *see also* Tr. 363 (affirming opinions of Mr. Flynn). As Ms. Pressley also observes Dr. Monica Carillo opined she could lift only five pounds occasionally and two pounds frequently. Dkt. 16 at 16 (*citing* Tr. 1263).

However, the record also shows Dr. Heilbrunn found Ms. Pressley had "firm grasping" and "fine and dexterous movements," and she could be expected to lift and carry fifteen pounds.[4] Tr. 328. Reviewing this record, Mr. Flynn opined Ms. Pressley could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. Tr. 332. Additionally, Dr. Carillo opined Ms. Pressley had no gross or fine motor skill restrictions, and her impairments were only expected to inhibit work function for six months. Tr. 1263-64. On this record, the ALJ properly interpreted the evidence to suggest Ms. Pressley's hand impairment did not meet the severity requirement.

But even if the ALJ erred, Ms. Pressley has not shown harm. First, she fails to explain how her symptoms would result in any specific work-related limitations.[5] In fact, her arguments

---

[3] The record does not provide Mr. Flynn's credentials.

[4] Dr. Heilbrunn's functional assessment provides: "Her only objective findings to correlate with the above diagnoses is decreased left pinch strength between the thumb and index finger . . . In accordance with the objective findings, . . . [s]he has the use of her hands/arms for firm grasping, above - and below – shoulder - level reaching, fine and dexterous movements, feeling, and manipulating. She has a moderate decreased left pinch strength, but is able to effect most pinching activities, like handling her shoelaces or socks . . . The claimant could be expected to lift and carry 15 lbs with either hand on a frequent basis . . ." Tr. 328.

[5] Ms. Pressley contends "Plaintiff was harmed by the ALJ's failure to properly consider all of the severe impairments at step 2, in that the error resulted in an improper and unfounded credibility assessment and improper consideration of the treating physician's opinions. Also as a result, the

REPORT AND RECOMMENDATION - 5

are so vague, they appear to conflate concepts of fingering and lifting. *See, e.g.,* Dkt. 16 at 20. Second, the ALJ's RFC already incorporates Mr. Flynn's opinion as to lifting and carrying. *See* Tr. 332, 541. Additionally, Ms. Pressley concedes that she would still be capable of performing her past relevant work as a housekeeper even if her RFC was limited to only occasional fingering. *See* Dkt. 16 at 15 n.2 (*citing* Tr. 549 n.7). Thus, Ms. Pressley has failed to show reversible error at step two with respect to any hand impairment.

However, the ALJ failed to discuss Ms. Pressley's knee arthritis at step two. Dr. Heilbrunn diagnosed "bilateral knee osteoarthritis and subpatellar crepitus." Tr. 328. Dr. Carillo opined Ms. Pressley was limited to standing/walking for 1.5 hours in ten minute increments, and she had severely reduced range of motion, stability, and strength in her knees. Tr. 1261, 1263. The Court finds Ms. Pressley has established she meets the *de minimis* threshold for a medically determinable, severe impairment. This error is not harmless because the ALJ's RFC includes significant standing and/or walking.[6] *See* Tr. 541. On remand, the ALJ shall consider whether Ms. Pressley has a severe impairment of degenerative joint disease affecting her knees.

**B.    The ALJ Did Not Err in Finding Ms. Pressley Less Than Fully Credible**

Ms. Pressley contends the ALJ erred in her adverse credibility finding. Dkt. 16 at 23. Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ discounted Ms. Pressley's credibility for a number of reasons; Ms. Pressley

---

ALJ's RFC assessment in the decision is erroneous and an over-estimation of Plaintiff's physical ability to stand/walk, lift/carry, and finger objects." Dkt. 16 at 20.

[6] The Commissioner argues it is irrelevant whether the ALJ missed a severe impairment at step two because he did not deny Ms. Pressley's claim at that step. Dkt. 19 at 21. The Court rejects that argument as inconsistent with the *de minimis* purpose of step two, and because it presumes that any errors at step two are rectified elsewhere in the five-step evaluation process. Because degenerative joint disease of the knees was not considered in Ms. Pressley's RFC, the error is not harmless.

REPORT AND RECOMMENDATION - 6

challenges only some of them.  For the reasons described below, the Court concludes Ms. Pressley has not established reversible error.

Ms. Pressley first asserts the ALJ's credibility determination was erroneous in finding her "not fully credible regarding her mental limitations or physical limitations . . . in part because [the ALJ] failed to properly consider all of the underlying physical impairments which could reasonably be expected to produce her pain limitations."  Dkt. 16 at 24 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  As a preliminary matter, the Court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003); *see also Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  The Court, therefore, will not intuit which of Ms. Pressley's "underlying physical impairments" she contends are at issue here.  Additionally, Ms. Pressley fails to explain how an error regarding *mental* limitations is in any way relevant to the ALJ's consideration of *physical* impairments and pain limitations.

Ms. Pressley also argues the ALJ "failed to properly show that Plaintiff was completely incredible regarding limitations in lifting and carrying items, or that she was completely incredible about her limitations in standing and walking."  Dkt. 16 at 18 (*citing* Tr. 541, 543). The argument is also vague, and does not explain the significance of the assertion that the ALJ erred because he did not find Ms. Pressley "completely" incredible.  As the Court understands the argument, Ms. Pressley contends that because the ALJ recognized she had some lifting/carrying and standing/walking limitations, the ALJ improperly discounted her credibility. *See* Dkt. 16 at 18 ("Even the ALJ found Plaintiff partially credible, and limited her lifting and carrying and standing/walking to a light level of exertion (Tr. 541)").  Ms. Pressley offers no

REPORT AND RECOMMENDATION - 7

support or explanation for the argument, and therefore, the argument has no merit.[7]  *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to address assertions unaccompanied by legal arguments:  "We require contentions to be accompanied by reasons.").

Ms. Pressley also contends the ALJ erred in finding her activities of daily living were inconsistent with her allegations of disabling functional limitations.  Dkt. 16 at 18-19, 24.  The ALJ noted that in 2008, Ms. Pressley reported she did her own laundry and cooking, cleaned her room, visited her daughter twice each week, visited the "Rainbow Center," watched television, listened to music, drove a car, and tended to personal hygiene.  Tr. 544.  The ALJ also noted that since her first hearing, Ms. Pressley has reported getting dressed, feeding her cat, sometimes doing housework, napping, going to appointments, watching movies with a neighbor, and doing yoga (which was recommended by a physical therapist).  Tr. 542.

A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony"; or that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  The ALJ's decision does not identify testimony that was contradicted by Ms. Pressley's conduct.[8]

---

[7] To the extent Ms. Pressley's argument may support her challenge to the weight the ALJ assigned the medical opinion evidence, the argument is addressed below.

[8] The Commissioner argues the ALJ did not err because Ms. Pressley's activities are inconsistent with her alleged level of impairment.  Dkt. 19 at 12.  However, "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225–

*See* Tr. 544. Additionally, the ALJ did not suggest that Ms. Pressley's activities are transferable to a work setting. Accordingly, the ALJ erred in discounting her credibility on this basis. *See Orn*, 495 F.3d at 639.

But the ALJ also provided other reasons to discredit Ms. Pressley's credibility, which are clear and convincing and supported by substantial evidence, and which Ms. Pressley does not challenge. The ALJ questioned Ms. Pressley's allegations regarding mental impairments because her fluctuating symptoms appeared to appropriately track particularly stressful events in her life.[9] Tr. 543. The ALJ also found that Ms. Pressley's complaints of mental impairments were inconsistent with her testimony; she failed to follow treatment recommendations; and a provider indicated her therapy was motivated by the possibility of financial gains. Tr. 544; *see also Fair v. Bowen*, 885 F.2d 597, 602–04 (9th Cir. 1989) (ALJ may consider (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; and (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment).

Thus, even assuming the ALJ erred as Ms. Pressley contends, she has not established harmful error. *See Carmickle*, 533 F.3d at 1162 (including an erroneous reason, among other reasons, to discount a claimant's credibility is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the

---

26 (9th Cir. 2009).

[9] For example, the ALJ found that Ms. Pressley's mental symptoms were exacerbated when "she was having problems with a boyfriend who wanted to live off her income [while,] [a]t the same time, she was undergoing a divorce and she was forced to live with her mother." Tr. 543. On other occasions, the ALJ noted, Ms. Pressley complained about increasing symptoms when she was going through menopause and experiencing conflicts with her mother, and again when she reported stress from difficulties with her children. Tr. 544.

REPORT AND RECOMMENDATION - 9

overall credibility determination). Accordingly, the Court recommends affirming the ALJ's credibility finding.

**C.     The ALJ Erred in Evaluating Dr. Carillo's January 2012 Opinion**

Ms. Pressley also argues the ALJ erred in discounting the opinions of treating doctor Monica Carillo, M.D., and examining doctor Susan Hakeman, M.D.. When a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1988). Where a treating or examining doctor's opinion is contradicted by that of another doctor, it may not be rejected without "specific and legitimate reasons based on substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

   1.     *Dr. Monica Carillo, M.D.*

Dr. Carillo's January 2010 opinions

Ms. Pressley first challenges the ALJ's rejection of treating Dr. Carillo's opinion that her impairments met or equaled the criteria for listing 12.04, affective disorders, and 12.06, anxiety disorders. Dkt. 16 at 3-8. The ALJ's observed that two reviewing doctors, Dr. Dan Donahue, Ph.D., and Dr. Alnoor Virji, M.D., declined to adopt Dr. Carillo's opinions because they found the opinion was based on Ms. Pressley's complaints and not supported by the evidence. Tr. 547 (*citing* Tr. 1012-23.). Ms. Pressley argues it was not appropriate for the ALJ to rely on reviewing Dr. Virji's Physical RFC assessment to discount Dr. Carillo's interrogatories; or to rely on Dr. Donahue's opinion, because he did not identify which of Dr. Carillo's records he reviewed when he rejected her opinion in his Mental RFC form. Dkt. 16 at 9. The Court agrees. The ALJ's reasons for rejecting Dr. Carillo's opinions on this basis were neither specific and legitimate, nor based on substantial evidence. Both doctors failed to identify which of Dr.

Carillo's records they reviewed in forming their own opinions. Additionally, it would not be rational for Dr. Virji to reject a mental impairment opinion in forming a physical RFC, nor would it be reasonable for the ALJ to discount a mental impairment opinion on the grounds that a reviewing doctor rejected that opinion in completing a physical RFC.

The ALJ also rejected Dr. Carillo's interrogatory opinions on the grounds that the doctor did not provide medical evidence to support her conclusions, and did not explain how she reached those conclusions. Tr. 547. The interrogatory forms completed by Dr. Carillo indicate that her opinions as to whether Ms. Pressley met the criteria for listing 12.04 and 12.06 were based on the fact that Ms. Pressley "has been under my care for five years during which I have participated in the management of her anxiety and depression," Tr. 511, and "Pt can not maintain employment due to incapacity to manage anxiety when demands are placed on her . . ." Tr. 497. There are no specific references to the record, and nothing indicates the doctor observed the findings she recorded. Ms. Pressley contends the ALJ's reasons for discounting the doctor's opinions were in error, because he ignored the length and nature of Dr. Carillo's treating relationship with her. Dkt. 16 at 8. In support of her argument, she identifies a number of treatment records between 2005 and 2009. [10] Dkt. 16 at 7.

"Although a treating physician's opinion is generally afforded the greatest weight in

---

[10]Ms. Pressley argues Dr. Carillo's treatment records document a "long-standing history of both depression and anxiety." Dkt. 16 at 7 (*citing* Tr. 260 ("still feels quite anxious"); Tr. 263 ("Had chest pain over weekend. Thinks it may be related to panic attacks."); Tr. 342 ("Depression. Patient reports it is slightly better with Zoloft 50 mg daily. She continues to suffer from apathy and decreased self esteem, decreased appetite, decreased concentration"); Tr. 346 ("she continues to have symptoms of depression and anxiety similar to those in the past, and wonders if she can get back on some kind of medication."); Tr. 371 (noting buspar medication for panic attack); Tr. 377 (noting "current problem list: depressive disorder nec"); Tr. 382 ("long-standing h/o of depression and anxiety. Has been on many different meds in the past like zoloft, citalopram. Most recently was on Prozac but started feeling suicidal so she stopped it.")). *See* Dkt. 16 at 7.

REPORT AND RECOMMENDATION - 11

disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). A treating physician's opinion need not be given controlling weight when it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]" *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Additionally, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)).

The ALJ gave specific and legitimate reasons for rejecting Dr. Carillo's opinions that she met or equaled the listing criteria. The opinions lacked objective medical findings, and the evidence Ms. Pressley proffers to support the opinions are susceptible to more than one rational interpretation. Accordingly, the ALJ's conclusion must be upheld.[11] *See Morgan v. Comm'r of*

---

[11] Ms. Pressley also argues the ALJ erred because his treatment of Dr. Carillo's opinions is "even more vague" than the reasoning given by the first administrative decision, which was rejected by this Court. Dkt. 16 at 6. Ms. Pressley later asserts the ALJ's reasons for rejecting Dr. Carillo's interrogatory opinions are "substantially the same reasons [the first ALJ] proffered and which have already been found invalid by the Court." Dkt. 16 at 12. The Court rejects these arguments for the reasons discussed above. *See* Section A, *supra*. Moreover, Ms. Pressley's analogies are suspect. ALJ Bauer rejected Dr. Carillo's opinion for wholly different reasons that are not relevant here. *Pressley*, C10-2007-RSM-BAT, 2011 WL 4437183, at *5 (the ALJ found Dr. Carillo is not a mental health specialist, her reports contradicted her own treatment records, and significant time had passed between Ms. Pressley's last examination with Dr. Carillo and the time she offered her opinion.). Additionally, the Court notes that the prior discussion of Dr. Carillo's opinions occurred in the context of an alleged error at step two of the five-step sequential evaluation. In that case, the ALJ had found a severe impairment of "reactive depression," and Ms. Pressley argued that the ALJ erred by failing to find her anxiety disorder was also a severe impairment. *Id.* at *1. The Court in that case discussed Dr. Carillo's prior treatment notes as a means to refute the ALJ's finding Ms. Pressley "felt no depression," not, as Ms. Pressley suggests, to support a particular opinion going to the ultimate question of disability. *Id.* at 5 (*citing* Tr. 19).

REPORT AND RECOMMENDATION - 12

*Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

Although the reasons the ALJ gave to discount Dr. Carillo's opinions are not error free, the Court concludes the ALJ's errors were harmless. This is because despite the errors, substantial evidence supports the remaining valid reasons the ALJ gave, and thus the ALJ's errors do not negate the validity of the his ultimate determination that Dr. Carilllo's interrogatory opinions "do[] not merit any weight." *See* Tr. 547; *see also Carmickle*, 533 F.3d at 1162.

<u>Dr. Carillo's January 2011 opinion</u>

Ms. Pressley also challenges the ALJ's rejection of Dr. Carillo's January 2011 opinion. Dkt. 16 at 17-20. The doctor's January 2011 opinion includes a partially completed DSHS "Range of Joint Motion Evaluation Chart." Tr. 1265-66. The doctor noted Ms. Pressley suffered from "severely reduced" range of motion in her knees and "severely reduced" stability and right knee strength. Tr. 1268. She opined Ms. Pressley could lift five pounds occasionally and two pounds frequently with both hands, and could stand/walk for 1.5 hours in ten minute increments. Tr. 1263.

The ALJ rejected Dr. Carillo's January 2011 opinion because the objective findings were not found in the report, the doctor relied on Ms. Pressley's complaints, and the findings were not supported by the record. Tr. 547-48. To the extent Ms. Pressley contends the ALJ erred in rejecting the opinion because he did not properly discount her self-reports regarding lifting/carrying and standing/walking limitations, Dkt. 18 at 16, the Court agrees. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). The ALJ did not address self reports about such limitations in his adverse credibility

determination. The ALJ also erred in rejecting the opinion on the basis that the objective observations were not included in the report with respect to Ms. Pressley's knee impairments, because the attached "Range of Joint Motion Evaluation Chart" indicates she provided her observations of Ms. Pressley's limitations in knee flexion/extension. Tr. 1265-66. For the same reason, the ALJ erred in assuming the doctor relied on Ms. Pressley's complaints with respect to her knee impairments.

Nevertheless, the ALJ properly rejected Dr. Carillo's opined walking and standing limitations as unsupported by the record. *See Batson*, 359 F.3d at 1195. Dr. Heilbrunn diagnosed "bilateral knee osteoarthritis and subpatellar crepitus," but his functional assessment states Ms. Pressley "has adequate balancing on either leg. And by history is able to negotiate steps, hills, and uneven terrain . . . She does not need or use an assistive device. The claimant could be expected to walk or stand for at least 30 minutes uninterrupted, and for a total of 5-6 out of 8 hours, with limitations correlating to . . . bilateral knee osteoarthritis . . ." Tr. 328. Additionally, Mr. Flynn and Dr. Virji opined Ms. Pressley could stand and/or walk for at least six hours in an eight-hour workday. Tr. 332; 1013. Substantial evidence also supports the ALJ's rejection of the only opinions that support Dr. Carillo's January 2011 opinion (Dr. Carillo's July 2008 and March 2010 opinions, Tr. 546-47, 355-60, 979-83).[12]

The ALJ also did not err in rejecting the doctor's opinions concerning Ms. Pressley's hand impairments, as she provided no objective basis for her opinion that Ms. Pressley was limited to lifting five or fewer pounds. The attached chart contains no findings regarding range

---

[12] In passing, Ms. Pressley challenges the ALJ's rejection of these opinions for their reliance on her subjective complaints. Dkt. 18 at 15-16, n.3. But the ALJ properly rejected the opinions because the doctor opined Ms. Pressley was limited to sedentary work without explanation, and her opined standing/walking limitation was unsupported and inconsistent with the doctor's findings. Tr. 546-47.

REPORT AND RECOMMENDATION - 14

of motion in the hand or wrist . *See* Tr. 1266.  Further, Dr. Carillo indicated Ms. Pressley had no gross or fine motor skill restrictions and her other opinions, to the extent they support this opinion, were properly rejected.[13]  *See* Tr. 546-47.  The record suggests Ms. Pressley was capable of carrying fifteen to twenty pounds.  Tr. 328, 332.

Thus, although the ALJ offered some invalid reasons to discount Dr. Carillo's January 2011 opinion, he also offered valid reasons, which were specific and legitimate.  The inclusion of invalid reasons does not affect the validity of the ALJ's ultimate conclusion that Ms. Pressley was not disabled.  *See Carmickle*, 533 F.3d at 1162.  Because substantial evidence supports the ALJ's valid reasons for discounting Dr. Carillo's opinions, the Court concludes the ALJ's invalid reasons were harmless.  The Court recommends affirming the ALJ's rejection of Dr. Carillo's January 2011 opinion.

Dr. Carillo's January 11, 2012 opinion

Ms. Pressley also contends the ALJ erred because he did not consider Dr. Carillo's "History & Physical Report" dated January 11, 2012.  Ms. Pressley argues the report indicates findings of "1+ pitting edema" (location unspecified) and severe reduction of flexibility, stability, and right knee strength.  Dkt. 16 at 19 (*citing* Tr. 1261).  Dr. Carillo also opined Ms. Pressley could lift no more than five pounds at a time without pain, and carry no more than two pounds at a time for any extended period of time, which she attributed to "lumbago" upon physical examination.  Tr. 1260-61. An ALJ "need not discuss all evidence presented to [him].  Rather, [he] must explain why "significant probative evidence has been rejected."  *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (*citing Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).  As these findings appear to attribute lifting and carrying restrictions to Ms. Pressley's back—an

---

[13] As the Court has observed, Ms. Pressley does not challenge all of the ALJ's valid reasons for rejecting Dr. Carillo's July 2008 and March 2010 opinions.

REPORT AND RECOMMENDATION - 15

impairment the ALJ found "severe"—the evidence is significant and probative. Because the ALJ failed to discuss this opinion, he failed to provide clear and convincing or specific and legitimate reasons to reject it. Accordingly, on remand, the Court recommends the ALJ reevaluate Dr. Carillo's January 11, 2012 report.

### 2. *Dr. Susan Hakeman, M.D.*

The ALJ adopted Dr. Hakeman's opinion that Ms. Pressley has difficulty interacting with the public, would work best independently, should not perform stressful or complex work, and should be limited to simple and routine work. Tr. 546. However, the ALJ assigned "little weight" to the remainder of the opinion for four reasons. Two of these were valid.

The ALJ first took issue with Dr. Hakeman's use of the word "marked" in her opinion, finding it was insufficient to support the doctor's disability statement because it was not defined in the opinion and because the impairment failed to describe what Ms. Pressley could do. Tr. 546. The ALJ's reasoning is plain error, not supported by substantial evidence, and not a clear and convincing reason to discount the doctor's opinion. *See Magallanes*, 881 F.2d at 750. The form lists a number of cognitive and social factors which must be rated according to the severity of the claimant's limitations. Tr. 351-52. The doctor appropriately indicated when Ms. Pressley had marked, moderate, mild, or no limitations. *Id.* Additionally, as Ms. Pressley correctly observes, the terms are defined directly on the form. Dkt. 16 at 22 ("Marked — very significant interference with basic work-related activities."). The ALJ erred in rejecting the opinion on this basis.

The ALJ also rejected the opinion because "the longitudinal record does not support the claimant is totally disabled with regard to work-related pressures." Ms. Pressley challenges this reasoning, asserting the ALJ has applied an improper legal standard. The Court is also perplexed

as to the purpose and intent of the ALJ's statement.  Nothing in the opinion indicates Dr. Hakeman opined Ms. Pressley was "totally disabled."  *See* Tr. 350-354.  The statement appears wholly disconnected from the substance of Dr. Hakeman's opinion, and accordingly, cannot be a clear and convincing reason to reject it.

However, the ALJ also provided valid reasons to discount Dr. Hakeman's opinion.  The ALJ did not err in rejecting the opinion because of the doctor's reliance on Ms. Pressley's subjective complaints.  The ALJ found "[t]he notations that the claimant had trouble with crowds, experienced panic attacks, and had medication side effects of headaches appear to simply be information that she obtained from the claimant."  Tr. 546.  Ms. Pressley's complaints were properly discounted for reasons she does not challenge, including inconsistent reporting about difficulties with public interaction and a lack of disruptions in daily activities and alleged mental difficulties (including panic attacks).  *See* Tr. 542, 544.  Thus, the ALJ properly discounted Dr. Hakeman's opinion on this basis.  *Tommasetti*, 533 F.3d at 1041.  Additionally, Dr. Hakeman did not support her opinion with her own observations.  *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations").  For example, the Mental Status Exam notes do not appear to support the severity of her opined limitations, nor, as the ALJ observed, did the doctor reference any of her objective findings.  *See* Tr. 354, 546.

The ALJ also found Dr. Hakeman failed to explain her basis for opining Ms. Pressley had marked limitations regarding work-related pressures.  Tr. 546 (*citing* Tr. 352 (finding marked restrictions in ability to respond appropriately to and tolerate the pressure and expectations of a

REPORT AND RECOMMENDATION - 17

normal work setting).  An ALJ need not accept the opinion of a doctor which is "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Here, the ALJ reasonably found the opinion provided inadequate explanation for the marked limitation it opined.  The doctor's only note in support of this opinion is "trouble with crowds . . . panic – has to leave + go outside immediately." Tr. 352.  Ms. Pressley contends the assessment is supported by Dr. Hakeman's mental status exam, which states that her mood was "dysphoric," her affect range "decreased," and she would "need to leave and go outside if having a panic [sic] attacks."  *See* Tr. 354.  But those findings too are conclusory and fail to establish a connection between the doctor's opinion and mental status exam findings.

Here, again, the inclusion of invalid reasons does not affect the validity of the ALJ's ultimate conclusion that Ms. Pressley was not disabled.  *See Batson*, 359 F.3d at 1197.  Thus, because substantial evidence supports the ALJ's valid reason for discounting Dr. Hakeman's opinion, the Court concludes the ALJ's invalid reasons were harmless.  The Court recommends affirming the ALJ's decision to discount Dr. Hakeman's opinion .

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ should consider whether Ms. Pressley has a severe impairment of degenerative joint disease affecting her knees, reevaluate Dr. Carillo's January 11, 2012 report (Tr. 1259-1261) and, as necessary, reevaluate the medical opinion evidence of record.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **June 30, 2014.**  If no objections are filed, the matter will be ready for the Court's consideration on **July 1, 2014**.  If objections are filed, any response is due within 14 days after being served with the objections. A

party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 16th day of June, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19